**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NAEEM BETZ, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-0292 (KBJ) |
| AIDNEST, | ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION ADOPTING
# REPORT & RECOMMENDATION OF THE MAGISTRATE JUDGE

Pro se plaintiff Na'eem Betz has filed the instant lawsuit against Aidnest ("Defendant"), a California student loan relief company, claiming that Aidnest violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, when it placed multiple calls to Betz's cell phone between November 7, 2017, and December 5, 2017, even though his D.C. cell phone number was listed on the National Do Not Call registry. (*See* Compl., ECF No. 1 ¶¶ 1, 10, 19.) Betz contends that Aidnest's phone calls were a "direct invasion of privacy[,]"and that they caused him "emotional damage, extra electricity usage, extra battery usage[,] lost time, aggravation, and continued distress." (*Id*. ¶ 19.) After Aidnest failed to file a timely answer to Betz's complaint, Betz requested an entry of default (*see* Aff. For Default, ECF No. 5), which the Clerk entered on March 30, 2018 (*see* Entry of Default, ECF No. 6). On April 2, 2018, Betz filed a motion for entry of default judgment against Aidnest (*see* Pl.'s Mot. for Entry of Default J. ("Pl.'s Mot."), ECF No. 7), and this Court referred the matter to a magistrate

judge for full case management. (*See* Minute Order of April 3, 2018; Minute Entry of April 3, 2018.)

On June 7, 2018, Magistrate Judge Harvey ordered Betz to show cause why his motion for default judgment should not be denied, and his action dismissed, for failure to establish that this Court has personal jurisdiction over Defendant. (*See* Order to Show Cause, ECF No. 9, at 3 (noting that Betz's submissions "fail[ed] to establish a *prima facie* showing demonstrating personal jurisdiction over Defendant").)[1] Magistrate Judge Harvey specifically pointed to Betz's failure to show that Aidnest (1) regularly does or solicits business in the District of Columbia, (2) engages in any persistent course of conduct in the District, or (3) derives substantial revenue from goods used or consumed, or services rendered, in the District. (*See id.* at 2.) The show-cause order required Betz to address this defect by setting out "the factual and legal basis for [his] belief as to why this Court has personal jurisdiction over Defendant." (*Id.* at 3.) Furthermore, to the extent that Betz alleged new facts in any response to the Order, Magistrate Judge Harvey instructed Betz to "aver these facts under oath or otherwise demonstrate them by admissible evidence." (*Id.*) On July 20, 2018, Betz responded to the Order and provided additional exhibits. (*See* Pl.'s Resp. to Order to Show Cause ("Pl.'s Resp."), ECF No. 11.)

Before this Court at present is the Report and Recommendation ("R&R") that Magistrate Judge Harvey filed on August 24, 2018, with respect to Betz's motion for a default judgment. (*See* R&R, ECF No. 12.)[2] The R&R reflects Magistrate Judge

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

[2] The Report and Recommendation is attached hereto as Appendix A.

Harvey's opinion that Betz's motion should be denied, and that Betz's complaint should be dismissed, for lack of personal jurisdiction. (*See id.* at 3–12.) The R&R evaluates Betz's submissions and concludes that Aidnest's alleged contact with the District of Columbia is insufficient to establish the requirements of D.C.'s long-arm statute, *see* D.C. Code § 13-423(a)(1)–(4), and in particular, that Betz failed to establish that Aidnest "(i) regularly does or solicits business in the District, (ii) engages in any other persistent course of conduct in this jurisdiction, or (iii) derives substantial revenue from goods used or consumed, or services rendered, in the District[,]" *see id*. § 13-423(a)(4); (R&R, at 8–12.) The R&R further informs the parties that either party may file written objections to its conclusions (*see id.* at 12–13), and that by failing to do so, the aggrieved party "may waive [its] right of appeal from an order of the District Court that adopts such findings and recommendation[s]." (*Id.* at 13 (citing *Thomas v. Arn*, 474 U.S. 140 (1985)).)

Under this Court's local rules, any party who objects to a report and recommendation of a magistrate judge must file a written objection with the Clerk of the Court within 14 days of the party's receipt of the report, and any such written objection must specify the portions of the findings and recommendations to which each objection is made and the basis for each such objection. *See* LCvR 73.2(b). As of the date of the instant Memorandum Opinion—nearly two months after Magistrate Judge Harvey's R&R was issued—Betz has not filed any such objection.

This Court has reviewed Magistrate Judge Harvey's report and recommendation, and agrees with its careful and thorough analysis and conclusions. In particular, the Court agrees that Betz's assertion that Aidnest called his cell phone to "solicit business" in the District—for the purposes of (a)(4)(i)—is defective on its face since

3

Betz concedes that Defendant never left a message, making any effort to ascertain the purpose of these allegedly illegal telephone calls speculative at best. (*See* R&R, at 9.) Aidnest's status as a student loan forgiveness business, standing alone, does not necessarily establish that its phone calls were business solicitations. (*See id.* (citing *Burman v. Phoenix Worldwide Industries, Inc.*, 437 F. Supp. 2d 142, 153–56 (D.D.C. 2006)).) Nor do "five-plus" phone calls from an out-of-state defendant constitute a "persistent course of conduct" *in the District* for the purposes of (a)(4)(ii). (*See id.* (citing *Tavoulareas*, 720 F.2d at 193–94 (quoting D.C. Code provisions)); *see also id.* at 11 (noting that a persistent course of conduct requires conduct "separate from and in addition to the in-state injury" (citing *Crane*, 814 F.2d at 762)).)

This Court also concurs with Magistrate Judge Harvey's rejection of Betz's contention that Aidnest used a District of Columbia area code to call his cell phone, since the area code alone does not prove a caller's location. (*See id.* at 10 (collecting cases).) And the fact that Aidnest directly targets consumers in the District via its online presence (website, Facebook page, and Twitter account) is insufficient under (a)(4)(i) or (a)(4)(ii) (*see id.* at 11–12), because use of online or web-based resources by District of Columbia residents does not constitute "purposeful availment" by a defendant for the purpose of the minimum contacts test; rather, it is an "unavoidable side-effect of modern internet technology." (*See id.* (citing *Doe v. Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005)).)

In short, Betz has failed to show that this Court has personal jurisdiction over Aidnest, and given the lack of any objection to Magistrate Judge Harvey's R&R, this appears to be a conclusion with which Betz himself agrees. As a result, the instant case

4

fares no better than Betz's other unsuccessful attempts to bring TCPA claims against out-of-state-defendants.[3]

For all these reasons, Magistrate Judge Harvey's R&R is **ADOPTED** in its entirety. As a result, Betz's Motion for Entry of Default Judgment must be **DENIED**, and this case, too, must be **DISMISSED**.

A separate Order accompanies this Memorandum Opinion.

DATE: October 26, 2018

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[3] It appears that Betz is a repeat filer who has brought a number of unsuccessful TCPA claims in this district against various out-of-state defendants, each of which has been dismissed for lack of personal jurisdiction over the defendants. (*See* R & R at 2 n.1 (citing other TCPA cases brought by Plaintiff).)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAEEM BETZ

        Plaintiff,

v.

AIDNEST

        Defendant.

No. 1:18-cv-00292 (KBJ/GMH)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for a Report and Recommendation on Plaintiff Na'eem Betz's motion for default judgment. [Dkt. 7]. In this case, Plaintiff, a District of Columbia resident appearing *pro se*, seeks to recover damages from Aidnest ("Defendant") for its alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. [Dkt. 1, ¶ 1]. Upon consideration of Plaintiff's complaint, motion for default judgment, and the supporting affidavits and documentary evidence, the undersigned **RECOMMENDS** that Plaintiff's motion for default judgment be **DENIED** and that the complaint be **DISMISSED** for lack of personal jurisdiction over Defendant.

### I.    BACKGROUND

According to the facts alleged in the complaint and Plaintiff's motion for default judgment, Defendant, a California student loan relief company, called Plaintiff's cell phone number in the District of Columbia "five plus" times between November 7, 2017, and December 5, 2017, even though Plaintiff's cell phone number had been on the National Do Not Call registry since April 2012. [Dkt. 1, ¶¶ 10, 19]. Believing the calls constituted violations of the TCPA, on December

20, 2017, Plaintiff called the phone number that had been calling him, and spoke to a call center customer service representative for Defendant who informed Plaintiff that his cell phone number was collected by "some type of contact made online through some third party by internet searching or browsing." *Id.* at ¶ 19. The customer service representative agreed to remove Plaintiff's cell phone number from Defendant's dialing system. *Id.*

Two months later, Plaintiff filed this lawsuit against Defendant alleging violations of the TCPA. In his complaint, he contends that the calls caused him "emotional damage, extra electricity usage, extra battery usage, . . . lost time, aggravation, and continued distress," and that they were "a direct invasion of privacy."[1] [Dkt. 1 at ¶ 19]. On February 12, 2018, Defendant was served with the compliant via certified mail. [Dkt. 4; Dkt. 4-1, Ex. E]; Fed. R. Civ. P. 4(h). When Defendant failed to file an answer within 21 days as required by Federal Rule of Civil Procedure 12(a)(1)(A), Plaintiff requested an entry of default. [Dkt. 5]. On March 30, 2018, the Clerk entered default. [Dkt. 6]. On April 2, 2018, Plaintiff filed the instant motion seeking entry of a default judgment. [Dkt. 7]. To date, Defendant has failed to file any response to the complaint or Plaintiff's motion for default judgment.

## II.  LEGAL STANDARD

A default judgment is normally available where "the adversary process has been halted because of an essentially unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Obtaining a default judgment requires two steps. *Lanny J. Davis & Assocs.*

---

[1] Plaintiff has brought a number of TCPA claims in this district against out-of-state defendants. All of the cases have settled without litigation over the scope of the Court's personal jurisdiction over the defendants. *See Betz v. First Credit Services, Inc.*, 15-cv-1376 (D.D.C July 8, 2016); *Betz v. Premiere Credit of North America, LLC*, 16-cv-1391 (D.D.C. Nov. 30, 2016); *Betz v. Bradford Exchange, Ltd. et al.*, 16-cv-2357 (D.D.C. Feb. 15, 2017); *Betz v. National Student Aid Care*, 17-cv-614 (D.D.C. Aug. 29, 2017); *Betz v. Your Student Loan Solution, et al.*, 17-cv-1955 (D.D.C. Oct. 27, 2017); *Betz v. Diversified Consultants, Inc.*, 17-cv-2457 (D.D.C. Apr. 18, 2018).

2

*LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 161 (D.D.C. 2013). First, the plaintiff must request that the Clerk of Court enter default against a party who has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, the plaintiff must move for entry of a default judgment. *Id.* 55(b). "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011). "Put another way, the clerk's entry of default alone is enough to establish the defendant's liability, but the court still retains discretion to determine whether default judgment is appropriate." *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014). In making that showing, plaintiffs are not limited to evidence meeting the standards of admissibility reserved for summary judgment and trial; rather, they need only "rest their arguments on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id.* However, "bare allegations and conclusory statements are insufficient." *Trudel*, 302 F. Supp. 3d at 142 (citing *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)).

### III. DISCUSSION

"Before entering judgment against an absent defendant, . . . 'a court should satisfy itself that it has personal jurisdiction' over that defendant." *Trudel v. Suntrust Bank*, 302 F. Supp. 3d 140, 142 (D.D.C. 2018) (quoting *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005)). Personal jurisdiction over a defendant—or the power of a court to impose judgment against a defendant in the event liability is established—is the plaintiff's burden to establish and is "'not waived by default when a party fails to appear or to respond.'" *Kline v. Williams*, No. Civ.A.05-01102(HHK), 2006 WL 758459, at *1 (D.D.C. Mar. 23, 2006) (quoting *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997)). In the default context, "although the plaintiffs

retain 'the burden of proving personal jurisdiction, [they] can satisfy that burden with a *prima facie* showing.'" *Mwani*, 417 F.3d at 7 (alteration in original) (quoting *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991)).

Finding Plaintiff's allegations insufficient to establish even a *prima facie* showing of personal jurisdiction over the Defendant, the undersigned issued a show-cause order on June 7, 2018. The order instructed Plaintiff to "set out the factual and legal basis for [his] belief" that this Court has personal jurisdiction over Defendant, which is based in California. [Dkt. 9]. Plaintiff responded on July 20, 2018. [Dkt. 11]. Even after considering that response, the undersigned recommends this Court find that Plaintiff has failed to meet his burden of establishing personal jurisdiction over the Defendant.

Personal jurisdiction comes in two forms, general and specific. *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C. 2006). General jurisdiction refers to the "'all purpose' adjudicatory authority" of a court "to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity"; specific jurisdiction refers to a court's authority "to entertain controversies based on acts of a defendant that touch and concern the forum." *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981). Here, Plaintiff makes no allegation sufficient to satisfy the "continuous and systematic" contacts between the Defendant—which is located in California—and the District of Columbia necessary to trigger this Court's general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). Plaintiff does not—and could not based on the facts he presents—claim that Defendant is effectively "present" in the District of Columbia, or has so purposefully availed itself of the benefits and protections of the laws of the District that it should be amenable to suit here on claims

4

unrelated to any acts done, or effects caused by Defendant in the District. [Dkt. 11 at 2-9, 15]. Rather, Plaintiff argues that this Court may exercise specific personal jurisdiction over Defendant because his TCPA claim arises from or is directly related to Defendant's contact with the District. *Id.*

Where, as here, subject matter jurisdiction is based on a federal question arising under a statute that is silent regarding service of process,[2] the Federal Rules of Civil Procedure require the Court to look to the long-arm statute of the forum—the District of Columbia in this case—in order to determine the existence of personal jurisdiction. *See Sierra Club v. Tennessee Valley Auth.*, 905 F. Supp. 2d 356, 361 (D.D.C. 2012) (applying District of Columbia long-arm statute where FOIA did not specifically provide for service of process on out-of-state defendant); *see also Georgia v. Penn. R.R. Co.*, 324 U.S. 439, 467 (1945) ("Apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial."); *see also Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016) ("Because [the plaintiff's] claim is based on the TCPA, which is silent regarding service of process, state law informs whether the Court has personal jurisdiction over the [defendants]."). Application of the local long-arm statute is then "subject to constitutional check." *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). "Due process sets the

---

[2] The Supreme Court held that federal courts have federal question jurisdiction over TCPA claims under 28 U.S.C. § 1331 in 2012, ending a circuit split on the issue. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012). Since then, district courts have expressly recognized the TCPA is silent regarding service of process for its private right of action provision. *See, e.g., Snow v. Gen. Elec. Co.*, No. 7:17-CV-01961-LSC, 2018 WL 3719849, at *2 (N.D. Ala. Aug. 3, 2018) ("Where, as here, jurisdiction is predicated upon a federal question arising under a statute that is 'silent regarding service of process,' Rule 4(e) requires a court to look to the state long-arm statute to determine the existence of personal jurisdiction." (footnote omitted) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626—27 (11th Cir. 1996))); *Sargeant v. Maroil Trading Inc.*, No. 17-81070-CIV, 2018 WL 3031841, at *2 (S.D. Fla. May 30, 2018) (same); *Moser v. Health Ins. Innovations, Inc.*, No. 3:17-CV-1127-WQH-KSC, 2018 WL 325112, at *3 (S.D. Cal. Jan. 5, 2018) (same); *Keim*, 199 F. Supp. 3d at 1367 (same); *Parchman v. SLM Corp.*, No. 215CV02819JTFCGC, 2017 WL 4556720, at *7 (W.D. Tenn. July 18, 2017) (same), *aff'd in part, rev'd in part and remanded on other grounds*, 896 F.3d 728 (6th Cir. 2018); *see also Mims*, 565 U.S. at 381 n. 11 (noting that while choice of venue and service of process were prescribed in the TCPA for actions brought by State Attorneys General, "[n]o similar prescriptions appear in the section on private actions.").

outer [or minimum] boundary; the local law may be coextensive with due process, or it may be more restrictive than the constitutional limit," but it cannot be less restrictive than due process would allow. *Id.*; *see also GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000). That is, suit should not be permitted against a non-resident defendant who satisfies the requirements of a long-arm statute but who lacks "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. As discussed below, because the scope of the operative section of the District's long-arm statute is, if anything, more restrictive than what constitutional due process would permit, compliance with the statute controls the analysis here. *See infra* footnote 3.

The District's long-arm statute provides, in pertinent part, that courts may exercise personal jurisdiction over any person, who acts directly or through an agent, as to a claim for relief arising from the person's:

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a)(1)-(4). In this case, there is no serious allegation that Plaintiff's claims arise out of any contractual or transactional relationship involving the District sufficient to satisfy either sections (a)(1) or (a)(2). *Cf. Kopff*, 425 F. Supp. 2d at 81 (finding that TCPA claims against officers and employees of defunct advertising company, stemming from Plaintiff's receipt of

6

unwanted facsimile transmissions in the District of Columbia from the company, "assuredly do not arise out of any contractual or transactional relationship involving the District" sufficient to trigger jurisdiction under either section (a)(1) or (a)(2) of the long-arm statute); *see also Crane*, 814 F.2d at 763 (finding that allegedly libelous letter sent from New York and received in various places in the District did not "arise out of any business [the defendant] transacted here"; "[s]uch specific, 'transacting business' jurisdiction might be invoked, for example, by [a] local printer of . . . [a] magazine . . . , if [the defendant] failed to pay for printing done . . . in the District"). Rather, Plaintiff alleges that he suffered tortious injury in the District as a result of Defendant's telephone calls. [Dkt. 1 at ¶¶ 1, 19]. TCPA violations do, in fact, "sound in tort." *Moser v. Health Ins. Innovations, Inc.*, ___ F. Supp. 3d ___, 2018 WL 325112, at *3 (S.D. Cal. Jan. 5, 2018); *see also Kopff*, 425 F. Supp. 2d at 82 ("[T]he [TCPA] claims here are based on alleged conduct in the nature of a tort."). Accordingly, either section (a)(3) or (a)(4) of the long-arm statute—both of which apply to tortious conduct—are applicable. The question is, which one? If the telephone calls at issue are deemed acts occurring inside the District, section (a)(3) would apply; if they are deemed acts occurring outside the District, section (a)(4) would apply. *See* D.C. Code § 13-423(a)(3)–(4).

On that issue, the D.C. Circuit's decision in *Tavoulareas v. Comnas* is instructive. There, the Court of Appeals held that the act of calling an individual in the District of Columbia while the caller is outside the District of Columbia is considered an act occurring outside the District of Columbia, thus triggering the requirements of section (a)(4), not section (a)(3). 720 F.2d 192, 193–94 (D.C. Cir. 1983); *see also Kopff*, 425 F. Supp. 2d at 82 (applying section (a)(4) of the long-arm statute to TCPA violation involving faxes sent into the District of Columbia). Here, Plaintiff alleges that, when the offending calls were made to his cell phone, he was in the District of Columbia and Defendant was "a California business with a principal place of business in Irvine,

7

California." [Dkt. 1, ¶¶ 1, 10, 19]. Thus, the operative section of the long-arm statute is (a)(4), a conclusion which Plaintiff does not dispute. [Dkt 11 at 9].

The only remaining question is whether Defendant satisfies one of what the D.C. Circuit has termed section (a)(4)'s "plus factors": whether it "[i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4); *Crane*, 814 F.2d at 762–63. These factors "serve as a 'reasonable connection' between the defendant and the forum State, 'filter[ing] out cases in which the inforum impact is an isolated event and [in which] defendant otherwise has no, or scant, affiliations with the forum.'" *Kline*, 2006 WL 758459 at *3 (alterations in original) (quoting *Crane*, 814 F.2d at 763). As the Court of Appeals observed in *Crane*, by requiring these "plus factors," the drafters of section (a)(4) necessitated "'some other reasonable connection between the state and the defendant' separate from and in addition to the in-state injury."[3] 814 F.2d at 762 (quoting UNIF. INTERSTATE & INTERNATIONAL PROCEDURE ACT § 1.03 comment, 13 U.L.A. 363 (1986)).

Plaintiff makes three primary arguments seeking to satisfy either the "regularly does or solicits business" or "engages in any other persistent course of conduct . . . in the District" plus factors: (1) that Defendant called Plaintiff's cell phone "five plus" times to solicit business in the District of Columbia, [Dkt. 11, ¶ 17]; (2) that the telephone number Defendant used to place the calls had a District of Columbia area code, *id.*, ¶ 17; and (3) that Defendant directly targeted consumers in the District of Columbia via its website, *id.*, ¶ 26. None of these arguments is

---

[3] Because of these factors, section (a)(4)'s scope is, if anything, narrower than constitutional due process would permit. *See generally Crane*, 814 F.2d at 762. Thus, it is section (a)(4)'s requirements, and not due process, that controls the personal jurisdiction analysis here.

sufficient to establishing even a *prima facie* showing of personal jurisdiction over Defendant under section (a)(4).

Plaintiff's first assertion that Defendant called his cell phone to solicit business in the District of Columbia, suffers from both evidentiary and legal deficiencies. To begin, Plaintiff avers Defendant "never le[ft] a message to identify the true nature of these illegal telephone calls." [Dkt. 1, ¶ 22]. Thus, he cannot say what their purpose was. Even acknowledging that Defendant runs a student loan forgiveness business, a handful of calls is scant evidence standing alone of Defendant having done or solicited business in the District. *Cf. Burman v. Phoenix Worldwide Industries, Inc.*, 437 F. Supp. 2d 142, 153–56 (D.D.C. 2006) (holding no personal jurisdiction over a Florida accounting firm that placed 1,326 calls into the District of Columbia during the period the firm was providing accounting services to seven clients who resided in the District, because of "the absence of any evidence that the telephone calls were related to doing or soliciting business in the District of Columbia").

Moreover, the D.C. Circuit has held that telephone calls placed by an out-of-state defendant into the District of Columbia are not "a persistent course of conduct *in the District*" as section (a)(4)'s plus factors require. *See Tavoulareas*, 720 F.2d at 193–94 (emphasis in original) (quoting D.C. Code § 13-423(a)(4)). Rather, in *Tavoulareas* then-Judge Scalia refused to "delve into a magical mystery tour of 'projecting presences'" and deemed such in-coming calls a "non-presence" in the District that "prevents them from being a 'course of conduct in the District' for purposes of (a)(4)." *Id.* at 194 (quoting *Margoles v. Johns*, 483 F.2d 1212, 1218 (D.C. Cir. 1973)); *see also Kline*, 2006 WL 2265414 at *3 (allegations of tortious acts, all conducted over the telephone, "without ever suggesting that defendant[] ha[s] done anything whatsoever in the District

9

itself" other than the telephone calls the plaintiff received, are insufficient to establish a *prima facie* showing of personal jurisdiction over an out-of-state defendant under section (a)(4)).

Plaintiff's assertion that Defendant used a District of Columbia area code to call his cell phone does not alter that analysis. The use of a local area code does not demonstrate that the caller is located in that area code. *See Lucas v. DeSilva Automotive Servs.*, Case No. 1:16-cv-790, 2018 WL 2020744, at *6–*7 (S.D. Ohio May 1, 2018) (describing how companies may lease local area codes to make phone calls that do not correspond to the caller's physical location); *see also Frank v. Gold's Gym of N. Augusta*, No. 18-447, 2018 U.S. Dist. LEXIS 108231, at *7 n.7 (D. Minn. June 28, 2018) ("The fact that the numbers were allegedly dialed with an automatic telephone dialing system also weighs against finding that [defendant] expressly aimed its actions at Minnesota or that it knew that any harm suffered would be felt in Minnesota."). Indeed, several federal courts have recognized in TCPA cases that, with respect to cell phones, the area code prefix is "not dispositive of the residence, domicile or location of the cell phone owner." *Cantu v. Platinum Mktg. Grp., LLC*, CIVIL NO. 1:14-CV-71, 2015 U.S. Dist. LEXIS 90824, at *11 (S.D. Tex. July 13, 2015) (quoting *Sojka v. Loyalty Media LLC*, Case No. 14-cv-770, 2015 WL 2444506, at *3 (N.D. Ill. May 20, 2015)) (collecting cases). The same is true for those companies utilizing dialing or "neighbor spoofing" services. *See* FCC Consumer Alert, *Protect Yourself Against 'Neighbor Spoofing'* (March 8, 2018), https://transition.fcc.gov/Daily_Releases/Daily_Business/2018/db0308/DOC-349632A1.pdf ("[A] 'local' number no longer means it is necessarily a local caller."). Similarly, the use of a local area code by an out-of-state defendant, without more, should not be the basis on which this Court exercises personal jurisdiction over a defendant.

Finally, even if the "five plus" phone calls themselves were evidence of business solicitation or otherwise qualifying course of conduct in the District, section (a)(4) requires that

10

any such acts occur "regularly" or be "persistent" in the District. D.C. Code § 13-423(a)(4). Courts in this district have found conduct much more significant than the phone calls at issue here to be insufficient to support the exercise of personal jurisdiction over an out-of-state defendant. *See, e.g., Bigelow v. Garrett*, 299 F. Supp. 3d 34, 46–47 (D.D.C. 2018) (finding no personal jurisdiction over out-of-state defendant who raised funds from donors in the District of Columbia and communicated with District residents); *The Urban Institute v. FINCON Servs.*, 681 F. Supp. 2d 41, 46–48 (D.D.C. 2010) (finding no personal jurisdiction over out-of-state defendant which made three business-related trips to the District); *Burman*, 437 F. Supp. 2d at 153–56 (finding no personal jurisdiction over out-of-state defendant that had seven clients and over $30,000 in revenue from the District); *cf. Covington*, 2003 WL 21384825, at *6 (D.C. Superior Court holding personal jurisdiction was proper over defendants who sent 1,634 unsolicited faxes to plaintiff, in violation of the TCPA). The result should be no different here. Indeed, as the Court of Appeals instructed in *Crane*, section (a)(4)'s "plus factors" require a plaintiff to establish conduct "separate from and in addition to the in-state injury." 814 F.2d at 762. Here, Plaintiff has not demonstrated conduct outside the allegedly injurious phone calls. Thus, this appears to be a case where "the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum" thus making the assertion of this Court's personal jurisdiction over Defendant unmerited. *Id.* at 763.

Certainly, Plaintiff's contention that Defendant directly targets consumers in the District of Columbia via its website does little to move the needle in his direction. This Court has consistently held that the maintenance of a website that is merely accessible by District of Columbia residents is insufficient to establish the minimum contacts necessary to establish personal jurisdiction over an out-of-state defendant. *See Doe v. Israel*, 400 F. Supp. 2d 86, 121

(D.D.C. 2005); *see also GTE New Media Servs.*, 199 F.3d at 1350 (the argument that "mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' with this forum . . . simply cannot hold water"). The same result should issue here. The screenshots of Defendant's website, Facebook page, and Twitter account provided by Plaintiff do not suggest that Defendant directly targets consumers in the District of Columbia any more than it directly targets consumers in other states. [Dkt. 1-1, Ex. C; Dkt. 7-4, Ex. G at 6–18]. Such a "website accessible by computers in the District of Columbia, or by District of Columbia residents, is not purposeful availment; rather, it is merely an unavoidable side-effect of modern internet technology."[4] *Doe*, 400 F. Supp. 2d at 121.

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for default judgment, [Dkt. 7], be **DENIED** and that the complaint be **DISMISSED**, both for lack of personal jurisdiction over Defendant.[5]

\* \* \* \* \*

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically

---

[4] Plaintiff's reliance on a complaint he filed with the national Better Business Bureau ("BBB") regarding Defendant fares no better. [Dkt. 11-2, Ex. F]. It is unclear how this piece of evidence supports his showing that this Court may exercise personal jurisdiction over Defendant; it is a defendant's actions and conduct that matter to the analysis, not the plaintiff's. In any event, Plaintiff's BBB complaint was handled by a local BBB dispute center in San Diego California, less than 100 miles from Defendant's physical location in Irvine, California—a fact which, if anything, undermines Plaintiff's argument that Defendant may be reached by D.C.'s long-arm statute. [Dkt. 11-2, Ex. F at 2].

[5] Of course, so holding would not preclude Plaintiff from bringing suit in the forum that has general jurisdiction over Defendant, i.e., where Defendant is incorporated or the location of its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. .140 (1985).

Date: August 24, 2018

G. MICHAEL HARVEY
United States Magistrate Judge